UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CAROL J. MACPHERSON,<br><br>              Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>              Defendant. | NO.  CV-04-5127-LRS<br><br>**ORDER REMANDING TO THE ALJ** |

**INTRODUCTION**

Plaintiff, Carol J. Macpherson, moves the court for summary judgment and the Defendant has submitted a cross-motion for summary judgment.  Because the Court finds the Administrative Law Judge ("ALJ") did not give due consideration to Plaintiff's undisputed obesity, did not properly reject Dr. Stephen Rubin's opinion of disability with specific, legitimate reasons, and did not provide specific findings concerning the Plaintiff's pain, including consideration of the credibility of the her subjective testimony, this case is remanded for  additional proceedings before the Administrative Law Judge (ALJ) pursuant to sentence four of 42 U.S.C. § 405(g).

///

ORDER REMANDING TO THE ALJ - 1

**STATEMENT OF FACTS**

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs of both Plaintiff and Defendant. This Court will recite those facts by summary only.

Plaintiff filed concurrent applications for a period of disability, disability insurance benefits and supplemental security income (SSI) under Titles II and XVI[1] on July 23, 2001 (Tr. 18, 82-84). Plaintiff alleged disability beginning February 28, 2001 (Tr. 82). Her date last insured under Title II was June 30, 2002 (Tr. 18-19, 86-98). Benefits were denied initially and upon reconsideration (Tr. 45-48, 51-53). A request for a hearing was timely filed (Tr. 54-55).

On May 7, 2003, a hearing was held before ALJ R.J. Payne in Kennewick, Washington (Tr. 596-656). Testimony was taken from Plaintiff, who was represented by an attorney, Gary Ponti; Jay M. Toews, Ed.D., a medical expert; and Richard Cheney, a vocational expert.

Born on June 17, 1954, Plaintiff was 49 years old at the time the ALJ issued his decision (Tr. 28). Plaintiff has more than a high school degree, with two years of college indicated (Tr. 27). Her prior work experience was as a cashier, home health care aide, housekeeper, and agriculture produce sorter (Tr. 19).

///

---

[1]Though there are some different threshold eligibility requirements for disability and SSI benefits, the analysis for determining disability is identical under both programs. See 20 C.F.R. §§ 404.1520 (disability) and 416.920 (SSI).

ORDER REMANDING TO THE ALJ - 2

Plaintiff alleges disability as of February 28, 2001, based on a variety of musculoskeletal and mental impairments. These include post-status surgery for Morton's neuroma of the feet; a knee contusion later noted to be arthritis; possible fibromyalgia; morbid obesity; hypertension; osteoarthritis of the low back; recurrent sinusitis/allergies; a 1995 evaluation for arteriosclerotic heart disease with angina pectoris; indications of carpal tunnel syndrome/bilateral wrist tendonitis, abdominal pain/irritable bowel syndrome; and indications of bipolar and/or depression (Tr. 26).

At the hearing, Plaintiff testified that she has a care giver two hours a day, five days a week because she can't take care of her apartment due to physical problems (Tr. 634). Plaintiff can do her own dishes, light meal prep, and shop for groceries using a motorized scooter (Tr. 635-36).

Plaintiff testified that she has constant pain and if she gets stressed out, it's worse (Tr. 620, 622). If she does anything strenuous, i.e. mopping, vacuuming, the pain gets worse within five to ten minutes (Tr. 623-24). Her medication barely takes the edge off (Tr. 624). Plaintiff testified that her lower back gets spasms daily. Id. Plaintiff also testified that she has pain in her elbow, toes, feet, arms, hips, shoulders and knees, although her knees were not bothering her at the time of the hearing (Tr. 627-30, 645-46). She states that her fibromyalgia, and back and feet pain is getting worse (Tr. 637). Plaintiff testified that she is always tired and must take a nap daily (Tr. 641).

Plaintiff stated that she only socializes at home because she doesn't have the money to go out (Tr. 637). She testified that she

ORDER REMANDING TO THE ALJ - 3

went on a nine-hour Greyhound bus trip to see the Oakridge Boys in February of 2001.

Plaintiff is 5' 5 ½ " and weighs 329 pounds (Tr. 643-44). Her doctors have indicated reconditioning and weight reduction would be of benefit and improve her ability to function (Tr. 20). She testified that after she was laid off from K-Mart, she gained 80 pounds and hasn't lost it since then (Tr. 645).

On October 9, 2003, the ALJ found, in an eleven-page written decision, that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 18-28). The ALJ found that Plaintiff had the residual functional capacity to perform substantially all of sedentary level work activities defined in 20 CFR 404.1567 and 416.967 (Tr. 27, Finding 12). The ALJ found that Plaintiff could not return to her past work activities. The ALJ also found that: Plaintiff could stand and/or walk between 15 and 30 minutes at a time; she has limitations for frequent and prolonged pushing/pulling of objects or feet/leg controls; she can do only occasional stooping, crouching, crawling, kneeling; and she cannot perform at unprotected heights (ropes, ladders, scaffolding) or on hazardous machinery (Tr. 27, Finding 7). Relying on vocational expert testimony, the ALJ concluded that Plaintiff could perform the jobs of surveillance system monitor, telephone quotation clerk, and final assembler (Tr. 25-28, Findings 14, 15). The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to review the decision on October 1, 2004 (Tr. 8-10). Plaintiff then commenced this action.

///

ORDER REMANDING TO THE ALJ - 4

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),

ORDER REMANDING TO THE ALJ - 5

416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.

The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**DISCUSSION**

Plaintiff raises five issues on appeal. First, Plaintiff states the ALJ erred in disregarding the results of a consultative examination that raised significant issues of disability. Second,

ORDER REMANDING TO THE ALJ - 6

the ALJ failed to properly evaluate her obesity in relation to her other impairments.  Third, the appeals Counsel erred in not properly evaluating and applying the medical-vocational guidelines.  Fourth, the ALJ failed to fully develop the record, especially in light of Plaintiff's mental health claims.  Fifth, the ALJ erred in improperly discrediting Plaintiff's complaints of pain.

**A.   Review of Commissioner's Decision**

A district court must uphold the [Commissioner's] determination if the factual findings are supported by substantial evidence and the [Commissioner] applied the proper legal standards.  *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1990).  "Substantial evidence" means more than a "mere scintilla" of evidence, but "less than a preponderance."  *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.1990).  If the ALJ applies the wrong legal standard, the ALJ's decision must be set aside even though the findings are supported by substantial evidence.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

**B.   The ALJ Failed To Reject Dr. Rubin's Opinion of Disability With Specific, Legitimate Reasons**

Plaintiff argues that although the ALJ did reference the report of Dr. Stephen Rubin, he did not specifically reject that decision nor did he deal with the doctor's conclusions of disability. Plaintiff cites Ninth Circuit case law for the proposition that the uncontradicted opinions of an examining medical source are entitled to great weight and the ALJ may reject those opinions only by providing specific, clear, and convincing reasons that are supported by substantial evidence.  Ct. Rec. 17, at 5.

ORDER REMANDING TO THE ALJ - 7

Dr. Rubin concluded in the Psychological Diagnostic Evaluation on December 17, 2001 that "[a]t this point she seems totally incapable of holding a job either because of physical problems or mental problems." Tr. 409. It is noted that Dr. Rubin had evaluated Plaintiff on at least two occasions (Tr. 408).

According to Social Security regulations, a claimant must substantiate allegations of severe mental impairment with "medical evidence" consisting of clinical signs, symptoms, and test/laboratory findings. 20 C.F.R pt. 404, subpt. P, app.1, § 12.00B (2000). An "acceptable medical source," such as a licensed physician or a licensed or certified psychiatrist or psychologist, must provide this evidence. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2000). Dr. Rubin is a licensed clinical psychologist and, therefore, an acceptable medical source.

The ALJ, in his decision, addressed Dr. Rubin's opinion of disability as follows:

> Another consultative psychological evaluation in December 2001 indicated that the claimant suffered from a major depressive disorder which was severe and that she had been denied disability partly because she presented herself quite well. And it was opined that she seemed incapable of holding a job either because of her physical problems or mental problems. However, other than treatment of her medical conditions including prescription [refills] for lithium, the claimant reported that she had not undergone any other mental health treatment (Exhibit 18F).

The ALJ's justification for rejecting the examining medical source's opinion (Dr. Rubin) was not, in the undersigned's opinion,

///

///

ORDER REMANDING TO THE ALJ - 8

specific and legitimate.[2] The undersigned concludes that the ALJ did not sufficiently articulate reasons for rejection of Dr. Rubin's opinion and, therefore, did not meet his burden in this regard.

**C.  The ALJ Failed to Give Due Consideration to Plaintiff's Obesity**

Plaintiff's treating physicians diagnosed her with arthritis of the knee, osteoarthritis of the low back, fibromyalgia, and hypertension (Tr. 22). One examining physician, Dr. John Fackenthall, D.O., commented on Plaintiff's exogenous obesity, at a weight of 295 pounds, in an August 17, 2000 evaluation:

> Definitely, the patient needs to be in a reconditioning, weight loss program. This in itself would be beneficial in placing her back into a job market. This could be achieved with her family physician, dietitian, psychologist and trainer. Patient may elect to go to a commercial weight reduction program such as Weight Watchers and work with the YMCA trainer program and then working with her family physician and counselors to help her deal with her bipolar personality problems in this matter. Definitely she needs to have evaluation of the diaphoresis[3] that she experienced just during examination time moving about in the office with some evidence of some shortness of breathe [sic] when she does that. This during the office examination did not appear to [be] a life-threatening situation but it should be evaluated further to find more of the etiology and rule out cardiovascular potential diseases. (Tr. 333).

///

---

[2] It is noted that the Special Assistant Attorney gave specific, legitimate reasons for the ALJ to reject Dr. Rubin's opinion. Ct. Rec. 23, at pp. 7-8. However, the reasons argued by the Commissioner's legal representative cannot overcome the ALJ's failure to do so in the decision.

[3] Diaphoresis is defined as profuse sweating. See Taber's Cyclopedic Medical Dictionary 400 (14th ed. 1981)

ORDER REMANDING TO THE ALJ - 9

Plaintiff argues that the ALJ failed to acknowledge her obesity or the effect of her obesity on the sequential disability analysis. Ct. Rec. 17, at 7. The Commissioner argues that the ALJ properly assessed all of the evidence, including the significance of Plaintiff's obesity, and properly concluded that Plaintiff's impairments were not sufficient to form a presumption of disability.

Obesity is no longer a qualifying disability and cannot, by itself, qualify a claimant for disability benefits. 64 FR 46122; SSR 02-01. It must, however, be considered in disability assessments, and remains classified as a "determinable impairment that can be the basis for a finding of disability." 64 FR 46122; SSR 02-01. In the context of obese claimants, the sequential evaluation process is augmented by the "special duty" of an Administrative Law Judge ("ALJ") to "fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." *Celaya*, 332 F.3d at 1183, *quoting Brown v. Heckler*, 713 F.2d 41, 443 (9th Cir.1983).

At the hearing, Plaintiff's weight was noted to be 329 pounds on a 5' 5 ½" frame (Tr. 643-44). Although this decision does not appear to be a *Celaya*[4] situation in light of the fact that the ALJ acknowledged Plaintiff's obesity, the Court finds that the ALJ's passing reference to a diagnosis of obesity falls short of weighing the effect of that obesity on Plaintiff's severe impairments. The

---

[4] In *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir.2003), the ALJ breached his duty to develop the record and assure Plaintiff's interests were considered by failing to acknowledge Plaintiff's obesity and to weigh its interactive effect on her other existing impairments.

ORDER REMANDING TO THE ALJ - 10

ALJ has a duty to assess the impact of Plaintiff's undisputed obesity on the various steps of the sequential evaluation process. Because this did not occur, the ALJ committed legal error in assessing Plaintiff's disability claim.

### D. The ALJ Failed To Set Forth Specific Findings Supporting His Belief That Plaintiff's Subjective Complaints of Pain Were Not Credible

The ALJ found that Plaintiff's "allegations of total disability are not totally credible for the reasons set forth in the body of the decision." (Tr. 26, Finding 5). Plaintiff argues that the ALJ erred in improperly discrediting her complaints of pain. Ct. Rec. 17, at 9. Plaintiff urges that it is well settled that a claimant's subjective complaints of pain which are supported by objective medical evidence are entitled to greater weight.

The Commissioner contends that the ALJ specifically noted the medical reports of the State Agency physicians and Dr. Fackenthal which identified and considered fibromyalgia, obesity and pain in assessing Plaintiff's disability claim. Ct. Rec. 23, at 9-10.

The claimant's pain need not be the inevitable result of the objective medical impairments; the pain need only be associated with such an impairment. *Hammock v. Bowen*, 867 F.2d 1209, 1213-14 (9th Cir.1989). The Court concludes that the findings are not entirely clear as to support the ALJ's belief that Plaintiff's complaints of pain were not credible. If the ALJ did not fully believe the Plaintiff's claimant's subjective testimony, he was required to make specific findings supporting his belief, which was not done.

### E. Applicability of Medical-Vocational Guidelines

Plaintiff argues that the Appeals Council erred in not properly

ORDER REMANDING TO THE ALJ - 11

evaluating and applying the Medical-Vocational Guidelines (Grids). Ct. Rec. 17, at 7. At the hearing, the vocational expert did not find that Plaintiff had any particular transferable skills from her past relevant work that would be applicable to sedentary only positions. In advancing her argument, Plaintiff seems to rely on the fact that she was over fifty years old at the time she requested review by the Appeals Council. Id. Although not entirely clear, Plaintiff seems to suggest the Grids may be modified here as a "borderline situation."

The Commissioner responds that at all times relevant to the matter under judicial review, Plaintiff was younger than 50 years old, making her a "younger individual" as defined by the Social Security Act. Ct. Rec. 23, at 6. Additionally, the Commissioner adds, she has had two years of college and pursuant to the Grids, was presumptively not disabled as the ALJ properly found. Id.

In some cases, it is appropriate for the ALJ to rely on the Grids to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999). The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. The Secretary of Health and Human Resources promulgated these Guidelines in 1978 in order to improve the efficiency and uniformity of Social Security disability benefits determinations. *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

A "borderline situation" is one in which the claimant is "a few days to a few months of reaching an older age category." 20 C.F.R.

ORDER REMANDING TO THE ALJ - 12

§ 404.1563(b). In borderline situations, age categories are not applied "mechanically" if the higher age category can help the claimant attain disability status. Id. Thus, plaintiff is correct in stating that she may be eligible for disability under Rule 201.14 of the Grids.

Whether or not to consider a borderline situation is not the province of this Court. 20 C.F.R. § 404.1563(b). Borderline situations are considered in light of "evaluating the overall impact of all the factors" of claimant's case. Id. Factual findings and considerations are within the sound discretion of the ALJ, and this Court will defer to such findings.

**F.   Record Development--Alleged Mental Impairments**

Plaintiff argues that the ALJ failed to fully develop the record, especially in light of Plaintiff's mental and physical health claims. Ct. Rec. 17, at 8. Specifically, Plaintiff suggests that the ALJ should have ordered a consultative examination to assist in developing the record from a mental health standpoint. Id. Further, Plaintiff states that the ALJ improperly evaluated Plaintiff's diagnosis of fibromyalgia and did not properly link this diagnosis with her subjective symptoms, i.e. chronic muscle spasms and pain. Id.

The Commissioner responds that there was substantial evidence of mental health from the medical expert, Jay Toews, Ed.D. who reviewed the record and testified at the hearing. Ct. Rec. 23, at 7. Dr. Toews testified that any additional psychological testing would be only minimally informative. Id. The Commissioner argues that the ALJ fully analyzed Plaintiff's fibromyalgia, obesity and

ORDER REMANDING TO THE ALJ - 13

pain as well. Id. at 9. Specifically, the Commissioner states that Dr. Fackenthal and the State Agency physicians considered the combination of fibromyalgia, obesity and pain in formulating their opinions, which reports the ALJ noted in his decision. Id. at 10-11.

The undersigned finds that other than the specific items noted above to be lacking in preciseness and clarity, the record appears to have been developed adequately given the evidence that was before the ALJ.

**CONCLUSION**

The Court reverses the Commissioner's decision and remands for further proceedings consistent with this opinion. On remand, the ALJ shall consider and discuss in the Step 3 analysis, the effect of Plaintiff's obesity as a medically determinable impairment and its effect on Plaintiff's other impairments. The Commissioner shall reconsider the propriety of the decision to disregard Dr. Rubin's assessment. The Commissioner shall also remand for more specific findings concerning the Plaintiff's pain, including consideration of the credibility of the her subjective testimony.

Additionally, the parties may supplement the record with any additional information which may assist the trier of fact. The ALJ is free to consider any additional evidence or medical opinions which may bear on this case. Accordingly, the Commissioner is directed to re-evaluate the record and any additional evidence in light of the Court's comments. Given that it has been over three years since Plaintiff applied for benefits, the Commissioner is herewith requested to expedite this hearing.

ORDER REMANDING TO THE ALJ - 14

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **Ct. Rec. 16,** filed on May 31, 2005, is **GRANTED in part and DENIED in part**.

2. Defendant's Cross-Motion for Summary Judgment, **Ct. Rec. 22,** filed on July 8, 2005 is **DENIED**.

3. This case is **REMANDED** to the Commissioner for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this opinion.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and close this file.

**DATED** this 29th day of July, 2005.

*s/ Lonny Suko*
_____
LONNY R. SUKO
United States District Judge

ORDER REMANDING TO THE ALJ - 15